IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | | |
|---|---|---|
| Alice F. Mann, | ) | |
| | ) | C/A No. 6:05-3508-JFA-WMC |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| Jo Anne B. Barnhart, | ) | **ORDER** |
| Commissioner of Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

This matter is before the court for review of the Magistrate Judge's Report and
Recommendation made in accordance with 28 U.S.C. § 636(b)(1)(B) and Local Rule
83.VII.02.

The Magistrate Judge makes only a recommendation to this court.    The
recommendation has no presumptive weight, and the responsibility to make a final
determination remains with the court.  Mathews v. Weber, 423 U.S. 261 (1976).  The court
is charged with making a de novo determination of those portions of the Report and
Recommendation to which specific objection is made, and the court may accept, reject, or
modify, in whole or in part, the Recommendation of the Magistrate Judge, or recommit the
matter to him with instructions.  28 U.S.C. § 636(b)(1).

The plaintiff, Alice Mann, brings this action pursuant to Section 1631(c)(3) of the
Social Security Act, as amended, 42 U.S.C. § 1383(c)(3), to obtain judicial review of a final

1

decision of the Commissioner of Social Security (the "Commissioner") denying her claim for supplemental security income (SSI) benefits under Title XVI of the Social Security Act.

I.    Procedural History

The plaintiff previously filed three applications for SSI benefits. On October 13 1995, plaintiff protectively filed for SSI benefits alleging disability commencing January 13, 1995. An Administrative Law Judge (ALJ) issued an unfavorable decision on May 30, 1997, and the Appeals Council denied review on June 25, 1998. Plaintiff filed a civil action on July 30, 1998 (C.A. 6:98-2234-JFA-WMC). The Commissioner's decision was affirmed by order of this court on August 17, 1999.

Plaintiff's next application for SSI benefits was protectively filed on September 17, 1997 alleging disability commencing January 13, 1995. Her claim was denied initially on July 7, 1998 and was not pursued.

Plaintiff protectively filed her third application for SSI benefits on June 29, 1998 alleging disability commencing January 13, 1995. After an unfavorable ALJ decision on April 27, 2000, the Appeal's Council denied plaintiff's request for review on October 10, 2001. Plaintiff filed a civil action, and the claim was dismissed by consent order filed June 16, 2002.

Plaintiff filed her current application for SSI benefits on November 9, 2001. The claim was denied initially and on reconsideration. On May 19, 2004, the ALJ issued an unfavorable decision finding that the plaintiff was not entitled to benefits. Upon denial by the Appeal's Council on November 25, 2005 of the plaintiff's request for review, the ALJ's

2

finding became the final decision of the Commissioner.  Plaintiff thereafter filed this action in the United States District Court for the District of South Carolina pursuant to 42 U.S.C. § 1383(c)(3) seeking judicial review of the final decision of the Commissioner.

The United States Magistrate Judge to whom this matter was referred filed a comprehensive Report on December 5, 2006.  The Magistrate Judge recommended reversal of the Commissioner's decision under sentence four of 42 U.S.C. § 405(g), with a remand of the cause to the Commissioner for further proceedings.

The parties were advised of their right to file specific written objections to the Magistrate's Report.  The Commissioner timely filed objections to the Report on December 20, 2006.  Plaintiff timely filed a response to the Commissioner's objections on December 29, 2006.

II.     Standard of Review

The role of the federal judiciary in the administrative scheme established by the Social Security Act is a limited one.  The Social Security Act, 42 U.S.C. §§ 405(g), 1383(c)(3), limits this Court's review of a final decision of the Commissioner to (1) whether substantial evidence supports the Commissioner's findings and (2) whether the findings were reached through application of the correct legal standard.  Craig v. Chater, 76 F.3d 585, 589 (1996) (citing Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987).  Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion,'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938); it is "more than a scintilla, but less than a preponderance."

3

Thomas v. Celebrezze, 331 F. 2d 541, 543 (4th Cir. 1964). This standard precludes a <u>de novo</u> review of the factual circumstances that substitutes the court's findings for those of the Commissioner. <u>Vitek v. Finch</u>, 438 F.2d 1157, 1157 (4th Cir. 1971). "[T]he court [must] uphold the [Commissioner's] decision even should the court disagree with such decision as long as it is supported by "'substantial evidence.'" <u>Blalock v. Richardson</u>, 483 F.2d 773, 775 (4th Cir. 1972) (citation omitted).

"From this it does not follow, however, that the findings of the administrative agency are to be mechanically accepted. The statutorily granted right of review contemplates more than an uncritical rubber stamping of the administrative action." <u>Flack v. Cohen</u>, 413 F.2d 278, 279 (4th Cir. 1969). "[T]he courts must not abdicate their responsibility to give careful scrutiny to the whole record to assure that there is a sound foundation for the [Commissioner's] findings, and that his conclusion is rational." <u>Vitek</u>, 438 F.2d at 1157-58.

In brief, the plaintiff alleges disability due to brain aneurysm, headaches, depression, dizziness, fatigue, weakness, and ulcers. The plaintiff was forty-five on April 28, 2000[1] and forty-nine on the date of the ALJ's decision. She has an eighth-grade education and no past relevant work.

III.     <u>Discussion</u>

A.     Applicable Law

An individual is disabled if she is unable "to engage in any substantial gainful activity

---

[1] The plaintiff's claim is subject to the doctrine of <u>res judicata</u> through April 27, 2000, the date of the ALJ's decision on plaintiff's third claim.

by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 416(i)(1); § 1382c(a)(3)(A) (slight alteration in quote). The ALJ must perform five steps sequentially to determine if an applicant is eligible for DIB or SSI benefits. See 20 C.F.R. § 404.1520 (2005). The ALJ must determine whether (1) the claimant is engaged in substantial gainful activity; (2) the claimant's medical impairments are severe; (3) the claimant's impairments meet or exceed the severity of certain impairments; (4) the claimant, based on his residual functional capacity, can perform his past relevant work; and (5) whether the claimant, based on his residual functional capacity, can perform other work.

B.      ALJ's Findings

On August 25, 2004, the ALJ made the following findings of fact:

1.      The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

2.      The claimant's history of an aneurysm and depression are considered "severe" based on the requirements in the Regulations 20 CFR § 416.920(b).

3.      These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, of Regulation No. 4.

4.      The undersigned finds the claimant's allegations regarding her limitations are not totally credible for the reasons set forth in the body of the decision.

5.      The claimant has the residual functional capacity to perform work with restrictions including lifting and/or carrying 20 pounds occasionally, 10

5

pounds frequently; simple, routine work in a low stress environment (defined as requiring few decisions); only occasional interaction with the public; occasional balancing, stooping, kneeling, crouching, and crawling, no climbing of ladders, ropes, or scaffolds; avoidance of hazards such as unprotected heights, vibration, and dangerous machinery; and an environment free from poor ventilation, dust, fumes, gases, odors, humidity, wetness, and temperature extremes.

6.     The claimant is unable to perform any of her past relevant work or has no past relevant work experience (20 CFR § 416.965).

7.     The claimant is a "younger individual between the ages of 45 and 49" (20 CFR § 416.963).

8.     The claimant has "a limited education" (20 CFR § 416.964).

9.     The claimant has no transferable skills from any past relevant work and/or transferability of skills is not an issue in this case (20 CFR § 416.968).

10.     The claimant has the residual functional capacity to perform a significant range of light work (20 CFR § 416.967).

11.     Although the claimant's exertional limitations do not allow her to perform the full range of light work, using Medical-Vocational Rule 202.17 as a framework for decision-making, there are a significant number of jobs in the national economy that she could perform. Examples of such jobs include work as assembler, 5,090 jobs locally, 1 million plus nationally; packager, 3,740 jobs locally, 680,000 nationally; and inspector, 3,100 locally, 625,000 nationally.

12.     The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 CFR § 416.920(g)).

In her brief to this court, plaintiff argued that she was erroneously denied SSI benefits.

The plaintiff asserted two arguments to support her request for reversal with the award of benefits or, in the alternative, reversal with a remand for rehearing :

1.    The ALJ's finding that the record does not substantiate Alice's allegation of chronic headaches or severe depression is clearly contrary to the substantial weight of the evidence [and]

2.    The Commissioner did not sustain her burden of proving by the substantial weight of the evidence that jobs exist in significant numbers in the national economy that Alice could perform.

C.    Magistrate's Report and Recommendation

The Magistrate Judge concluded that (1) substantial evidence did not support the ALJ's finding that plaintiff's severe impairments could not cause the symptoms alleged (2) the ALJ failed to explain the residual functional capacity findings (3) the ALJ failed to explain the reasons for excluding restrictions from the hypothetical and (4) the ALJ failed to obtain vocational expert testimony to explain a conflict between the vocational expert's testimony and the Dictionary of Occupational Titles (DOT).  The Magistrate Judge, therefore, recommended that the Commissioner's decision be reversed under sentence four of 42 U.S. § 405(g), with a remand for further proceedings.

Specifically, the Magistrate Judge concluded that the case should be remanded to the Commissioner (1) to reevaluate plaintiff's subjective complaints by applying the proper credibility standard (2) explain the residual functional capacity findings (3) explain the reasons for excluding plaintiff's alleged limitations from the hypothetical and (4) obtain vocational expert testimony to explain the apparent conflict between the testimony and the DOT.  Finally, because plaintiff was a few months away from fifty years old at the time of the hearing, the Magistrate Judge concluded that the ALJ should be instructed to consider application of Rule 201.09 which would direct a finding of disabled if plaintiff were limited

7

to sedentary work.

    D.      Commissioner's Objections

The Commissioner made five objections to the Magistrate's Report. Each of these objections is discussed in turn.

    1.      The Commissioner claims the Magistrate Judge erred in finding that the ALJ did not properly analyze plaintiff's subjective complaints.

In assessing complaints of pain and other symptoms, the ALJ must first determine whether there is objective medical evidence showing the existence of a medical impairment which could reasonably be expected to produce the actual pain or other symptoms, in the amount and degree, alleged by the claimant. Craig v. Chater, 76 F.3d 585, 591, 594 (4th Cir. 1996). If there is such evidence, the ALJ must then consider the plaintiff's subjective complaints along with all of the evidence in the record. Id. Although subjective complaints of pain and other symptoms may not be discredited solely because they are not substantiated by objective evidence, "they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause" the pain or symptom. Id. at 595.

The plaintiff testified at the hearing on August 25, 2004 that she underwent surgery in 1995 for aneurysm clipping. She also testified that she had another aneurysm located at the base of her skull that her physician observed until 1999, at which point the physician informed her that the aneurysm had diminished and was stable. Plaintiff stated that she

8

sought the second opinion of another physician who recommended surgery for the remaining

aneurysm, but she testified that she did not return to the physician because she became

scared.

Plaintiff testified that since the relevant point in time, April 28, 2000, she has suffered

from headaches of different types that have worsened over the years; tension headaches

everyday for which she took over-the-counter medications; severe migraines at least once a

week lasting for two or three days for which Percoset was helpful.  Furthermore, the plaintiff

testified that suffered from depression for which she took Paxil, experienced hallucinations,

and had stomach problems, dizziness, fatigue, weakness, and problems with her jaw and

teeth.

The ALJ summarized the plaintiff's testimony as follows:

[T]he claimant testified that her headaches are getting worse.  She testified that
she has tension headaches every day, and has migraines at least once a week.
She testified that her depression is getting worse, and testified that she was not
active, she sleeps, cries, sits around the house, hears people whispering and
walking through the hall, and sees things.  She testified that she had infection
in her jaw and needed surgery but could not afford it.  She testified that she
watches television in the afternoons, and grocery shops about once a month.

The ALJ stated that he did "not find current objective medical evidence to substantiate

the allegations of severe residuals of chronic unrelenting headaches or severe depression."

He thus found that "claimant's description of her limitations exceeds medical substantiation

and is not consistent with other evidence and therefore, is not fully credible."  The ALJ noted

in particular that plaintiff "failed to keep some appointments because she was keeping her

grandchild, which lasted on and off for a year."  He also relied upon the lack of "emergency

9

room visits, intensive inpatient or outpatient hospital visits, no surgical intervention, no reported strength deficits, neurological deficits, atrophy, or changes in weight which are reliable indicators of longstanding, severe or intense pain."

The Magistrate Judge found that substantial evidence did not support the ALJ's finding that plaintiff's severe impairments could not be expected to produce the plaintiff's alleged symptoms because plaintiff's severe headaches and depression were well-documented in the record. Therefore, the Magistrate Judge recommended remand to the ALJ for assessment of plaintiff's credibility in accordance with proper standards for evaluating subjective symptoms. The Commissioner objected arguing that while the ALJ did not expressly state that plaintiff's impairments could cause her alleged symptoms, the ALJ "did not find that Plaintiff's impairments could not reasonably cause some of her symptoms," but rather the ALJ found that the "severity of her symptoms were not supported by the evidence." Plaintiff responded to the Commissioner's objections arguing that the ALJ failed to realize both the existence and the impact of plaintiff's impairments despite the overwhelming evidence.

The court finds that while the ALJ did not expressly find that plaintiff's impairments could cause her symptoms, the error was harmless because substantial evidence supports the ALJ's finding that the severity of plaintiff's alleged symptoms were not entirely credible.

The first step in the analysis of subjective symptoms requires the ALJ to determine whether the plaintiff's impairments could cause the alleged symptom. Here, the ALJ stated that the medical evidence did not substantiate severe residuals of chronic unrelenting

10

headaches or severe depression. He also noted that claimant's description of her limitations was inconsistent with other evidence. The ALJ thereby implicitly recognized that the plaintiff did suffer from these conditions and that they could cause the alleged symptoms, but that the symptoms were not fully credible as to the severity alleged.

The second step of the analysis requires the ALJ to consider plaintiff's subjective symptoms along with all available evidence. The ALJ first found that the "objective medical evidence [did not] substantiate plaintiff's allegations of severe residuals" of chronic headaches and severe depression. He also noted that claimant's description of her limitations exceeded medical substantiation. Contrary to plaintiff's argument in brief to this court, the ALJ did not state that there was no current objective evidence of chronic headaches or depression; instead, the ALJ's finding refers to plaintiff's alleged severity of symptoms due these conditions. Although the ALJ did not cite the inconsistent medical evidence directly after this conclusion, in the immediately preceding two pages, he reviewed medical records that documented plaintiff's depression and complaints of headaches but also noted that plaintiff's depression had improved; she attended therapy when her schedule allowed (underlined by the ALJ); plaintiff failed to keep follow-up appointments; plaintiff's physician expected that her headaches would improve with dental repair and social support; and plaintiff failed to follow-up with a dentist as recommended.

Other reports not expressly mentioned by the ALJ further support the inconsistency between the medical evidence and plaintiff's allegations of limitations due to her subjective complaints. For example, other evaluations reveal that although plaintiff continued to

complain of and receive treatment for headaches and depression, she reported that she was feeling better; Tylenol 3 helped her tooth pain and headaches, "she was starting to take more care of herself as far as depression was concerned" and; Paxil continued to help with her depression.

In addition to finding that the medical evidence did not substantiate the plaintiff's allegations as to the severity of her symptoms, the ALJ also considered plaintiff's own testimony as to her daily activities in determining credibility. The ALJ noted that plaintiff's descriptions of her limitations were inconsistent with other evidence, "of particular note, she failed to keep some appointments because she was keeping her grandchild, which lasted off and on for a year." Upon review, the hearing transcript reveals that the plaintiff testified that she kept her "newborn" grandchild "off and on for a year" while her daughter attended school. Plaintiff's attorney later clarified that she kept the child from January 2002 to May 2002 and three or four months in the fall of 2002. She testified that she stopped keeping him because he became too heavy, cried all of the time, started using a walker and pulling everything down, "[a]nd it was just aggravating to [her] nerves." Plaintiff testified, "It was just too stressful." Notably, the plaintiff did not testify that she was unable to watch her grandchild due to severe migraines or depression.

The ALJ was entitled to rely upon inconsistencies between the medical evidence and plaintiff's alleged severity of symptoms in assessing the extent and severity of plaintiff's subjective complaints. Craig v. Chater, 76 F.3d 585, 591, 595 (4th Cir. 1996) (quoting 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)) (The ALJ should "consider whether there are any

12

inconsistencies in the evidence and the extent to which there are any conflicts between [plaintiff's] statements and the rest of the evidence.").  The ALJ also properly relied upon other inconsistent evidence, such as plaintiff's caring for her grandchild, in determining whether the plaintiff's subjective complaints were fully credible.[2]  Craig v. Chater, 76 F.3d 585, 591, 595 (4th Cir. 1996) (stating that "evidence relevant to the severity of the impairment [includes] evidence of the claimant's daily activities").

This Court may properly review a credibility decision to determine whether it is supported by substantial evidence.  Johnson v. Barnhart, 434 F.3d 650, 659 (4th Cir. 2005).  The court finds that substantial evidence supports the ALJ's findings that plaintiff's subjective complaints were not fully credible.  Therefore, the court finds that the ALJ's failure to explicitly mention that plaintiff's conditions could cause her symptoms was a harmless error and does not require reversal.  Ngarurih v. Ashcroft, 371 F.3d 182, 190 n.8 (4th Cir. 2004) ("While the general rule is that an administrative order cannot be upheld unless the grounds upon which the agency acted in exercising its powers were those upon which its action can be sustained, reversal is not required when the alleged error clearly had no bearing on the procedure used or the substance of the decision reached.") (citations and internal quotation marks omitted).  Accordingly, the court finds that the Magistrate erred in

---

[2]  The ALJ also noted the absence of objective signs such as the lack of emergency room visits, intensive inpatient or outpatient hospital visits, surgical intervention, strength deficits, neurological deficits, atrophy, or changes in weight which are reliable indicators of longstanding, severe or intense pain.  The court notes that the absence of objective signs identified by the ALJ is insufficient to discredit plaintiff's subjective complaints. Craig, 76 F.3d at 594 (noting that objective evidence of pain, as opposed to an impairment, is not required); however, because substantial evidence supports the ALJ's conclusion independent of these signs, the error was not a harmful error.

13

concluding that the ALJ's credibility analysis required reversal and remand; the court

sustains the defendant's objection to this finding of the Magistrate Judge.

> 2. The Commissioner claims the Magistrate Judge erred in finding that the ALJ's failure to explain the plaintiff's residual functional capacity required reversal and remand.

The ALJ found that plaintiff had a residual functional capacity to lift twenty pounds

occasionally and ten pounds frequently (light work); engage in simple, routine work in a low

stress environment (which the ALJ defined as requiring few decisions); occasionally interact

with the public; occasionally balance, stoop, kneel, crouch, and crawl; but no climbing,

hazards, or environments with poor ventilation, dust, fumes, gases, odors, humidity, wetness,

and temperature extremes. The extent of the ALJ's rationale for plaintiff's RFC findings was

that he considered all medical opinions from acceptable medical sources.

Plaintiff asserted in brief that the ALJ failed to articulate the basis for his findings

regarding plaintiff's RFC. The plaintiff argued that the ALJ's findings were in direct

contravention of the opinions of other medical sources. For example, a state agency non-

examining physician found that plaintiff could only perform light work, while another state

agency non-examining physician found that plaintiff could perform sedentary work. The

ALJ found that plaintiff could engage in light work but provided no explanation for the

decision. Plaintiff also argued that the ALJ failed to consider evidence from state examining

medical consultants. Dr. Dickinson stated that working would not be the best choice for the

plaintiff and that plaintiff would be a poor candidate for rehabilitation and retraining.

Another examining consultant, Dr. Carraway, noted that plaintiff had a GAF score of 58

14

which indicates moderate difficulty in social, occupational, or school functioning.  Finally, a state non-examining physician also found that plaintiff had moderate restrictions in her activities of daily living and social functioning; the ALJ found that plaintiff had mild restrictions.  The ALJ failed to provide any indication of the sources relied upon, other than "all" medical sources, and failed to explain the basis for his RFC findings.

The Magistrate Judge concluded that the ALJ should be instructed to consider the evidence and explain his RFC findings; therefore, the ALJ recommended remand and reversal.  The Commissioner objected to the Magistrate's Report arguing that the ALJ is not required to supply specific medical evidence nor prepare a function-by-function analysis for medical conditions or impairments.  Plaintiff responds that the ALJ's RFC and limitations directly contradicted examining medical consultants and failed to set forth a sufficient rationale upon which the court could base its review.

"While the [Commissioner] is empowered . . . to resolve evidentiary conflicts, the [Commissioner], through the ALJ, is required to explicitly indicate "the weight given to all relevant evidence."  Murphy v. Bowen, 810 F.2d 433 (4th Cir. 1987).

> Unless the [Commissioner] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's "duty to scrutinize the record as a whole to determine whether the conclusions reached are rational."

Gordon v. Schweiker, 725 F.2d 231, 236 (4th Cir. 1984) (quoting Arnold v. Secretary, 567 F.2d 258, 259 (4th Cir. 1977)).

The ALJ's findings contradict medical source opinions.  Because the ALJ provided

no examination of the relevant reports in the decision, this court cannot review the ALJ's

RFC findings for substantial evidence.  The ALJ failed to explain the weight afforded to

"obviously probative exhibits" and this constitutes a harmful error requiring reversal and

remand.  Accordingly, the court adopts the Magistrate Judge's recommendation to reverse

and remand for a rehearing regarding plaintiff's RFC.  The court adopts the Magistrate's

Judge's recommendation that the ALJ should be instructed to consider this evidence and

explain the basis for his RFC findings.

> 3.    The Commissioner claims the Magistrate Judge erred in finding that the ALJ's failure to explain the hypothetical constituted a harmful error requiring remand.

In her brief to this court, plaintiff asserted that reversal is warranted because the

Commissioner failed to meet its burden in establishing that there are a significant number of

jobs in the national community that plaintiff could perform.  Specifically, plaintiff argues that

the hypothetical question posed to the vocational expert did not reflect her condition because

the ALJ failed to include all of the plaintiff's limitations—including her moderate difficulty

in occupational functioning, having to miss four days due to headaches, and that plaintiff

would be a poor candidate for rehabilitation and retraining.  The Magistrate Judge concluded

that because the evidence was not mentioned by the ALJ, the court should remand and direct

the ALJ to consider the evidence of plaintiff's limitations.  The Commissioner argued that

the ALJ properly found that these limitations were not supported by the evidence and thus

did not have to include them in the hypothetical given to the vocational expert.

"In order for a vocational expert's opinion to be relevant or helpful, it must be based

upon a consideration of all other evidence in the record." Walker v. Bowen, 889 F.2d 47, 50 (4th Cir.1989). As noted in section a, there is substantial evidence supporting the ALJ's credibility assessment of plaintiff's subjective complaints, including plaintiff's claims of debilitating migraines; thus, the ALJ did not err in finding no credible basis for the plaintiff's alleged limitation of missing four days per month due to migraines. However, because the ALJ failed to sufficiently explain the reasoning for plaintiff's RFC, substantial evidence does not support the ALJ's findings that there are a significant number of jobs in the community that plaintiff could perform; that is, the ALJ's failure to explain the RFC findings precluded the ALJ from meeting its burden by relying on the vocational expert's testimony (which was based on the ALJ's unsupported findings).

Therefore, the court adopts the Magistrate Judge's recommendation to reverse and remand with the direction to consider and discuss the reasons for or against the evidence of plaintiff's moderate difficulty in occupational functioning and ability to make occupational adjustments. The court need not adopt the Magistrate Judge's recommendation that the ALJ consider the limitation that plaintiff would miss four days per month; as previously noted, the ALJ's credibility finding regarding plaintiff's migraines is supported by substantial evidence.

    4.    The Commissioner claims that the Magistrate Judge erred in finding that the jobs identified by the ALJ conflicted with plaintiff's residual functional capacity.

The plaintiff argued in brief to this court that the jobs listed by the vocational expert exceeded the abilities of an individual with the restrictions imposed by the ALJ, much less

plaintiff's actual restrictions.  Specifically, the plaintiff asserted that the jobs listed by the vocational expert identified a higher reasoning level of 2[3] than the ALJ's hypothetical limitations, and plaintiff's limited education would only allow her to handle jobs with a reasoning level 1.[4]  The Magistrate Judge concluded that the decision should be remanded to obtain vocational expert testimony to resolve the conflict.  The Commissioner argues that the ALJ did not restrict plaintiff to a reasoning level of 1.  The Commissioner asserts that because the jobs identified each had a Specific Vocational Preparation (SPV) Level of 2,[5] the jobs identified did not conflict with the ALJ's restriction to limited, routine, low-stress jobs or with the definition of unskilled work.

This issue is one of first impression.  Other courts have found that the reasoning level assigned to a job is a measure of the complexity whereas SPV refers to the preparation needed to perform a job.  See Estrada v. Barnhart, 417 F. Supp. 2d 1299, 1302 n.3 (M.D. Fla. 2006) (citations omitted) ("The DOT's explanation of SVP suggests that SVP relates to the vocational preparation required to perform a job and does not address whether a job entails simple tasks, while the general educational requirements (GED), particularly the GED reasoning level, pertains to the complexity of the job."); see also Mead v. Barnhart, 2004 U.S. Dist. LEXIS 23198 (D.N.H. November 15, 2004) (Other courts have decided that

---

[3] In general, reasoning level 2 requires a person to "[a]pply common sense understanding to carry out detailed but uninvolved written or oral instructions.  Deal with problems involving a few concrete variables in or from standardized situations."

[4] In general, reasoning level 1 requires a person to "[a]pply common sense understanding to carry out simple one or two step instructions.  Deal with standardized situations and with occasional or no variables in or from these situations encountered on the job."

[5] Unskilled work "is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. § 416.968(a).  Social Security Ruling 00-4p defines unskilled work with a position of SPV 1 or 2.  SSR 00-4p.

contrary to the Commissioner's argument here, the SVP level in a DOT listing, indicating unskilled work, does not address whether a job entails only simple, repetitive tasks. Instead, the General Educational Development ("GED") requirements in the DOT listing are more pertinent to determining the complexity of the job, and a "GED" reasoning level of 2, or higher, assumes that the applicant is capable of more than simple or repetitive tasks.").

The issue is whether there is a conflict between the vocational expert's testimony and the Dictionary of Occupational Titles (DOT). If there is possible conflict between the reasoning level, then SSR 00-4p requires the ALJ to resolve the conflict with an explanation:

> When vocational evidence provided by a VE or VS is not consistent with information in the DOT, the adjudicator must resolve this conflict before relying on the VE or VS evidence to support a determination or decision that the individual is or is not disabled. The adjudicator will explain in the determination or decision how he or she resolved the conflict. The adjudicator must explain the resolution of the conflict irrespective of how the conflict was identified.

In the present case, the court need not adopt the recommendation of the Magistrate Judge to remand for resolution of the potential conflict or resolve this novel issue. As already established, the RFC and the hypothetical posed to the vocational expert were not based upon substantial evidence. Therefore, the Commissioner cannot rely upon the vocational expert's testimony to establish a significant number of jobs in the economy that plaintiff can perform.

  5. The Commissioner claims that the Magistrate Judge erred in remanding to the ALJ for consideration of plaintiff's age in accordance with Medical Vocational Rule 201.09.

Medical Vocational Rule 201.09 directs a finding of disabled for those in a "closely

19

approaching advanced age" category and an RFC for sedentary work.  The plaintiff argued

that under this rule, plaintiff, who was within "weeks" of her 50th birthday, should have been

found disabled.  The Magistrate Judge concluded that upon remand, the ALJ should be

instructed to consider the application of this rule to the plaintiff.  The Commissioner argues

that the Magistrate erred in requiring remand because the plaintiff was found to have a RFC

for light, not sedentary work.

The court finds that it is unnecessary to direct the ALJ to consider application of the

rule.  The rule could only be applicable if the ALJ finds that plaintiff's RFC is sedentary.

After reviewing all of the evidence as a whole, the court finds that substantial

evidence does not support the ALJ's conclusion that plaintiff was not disabled.

IV.     Conclusion

After a thorough and careful review of the record, including the findings of the ALJ,

the briefs from the plaintiff and the Commissioner, the Magistrate Judge's Report, and the

plaintiff's objections thereto, the court finds the Magistrate's Report provides an accurate

summary of the facts in the instant case.  The court adopts the Report of the Magistrate Judge

with the exception of sections a, d, and e.  This court reverses the Commissioner's final

decision and remands this case for further proceedings under sentence four of 42 U.S.C.

§405(g).

IT IS SO ORDERED.

March 30, 2007                              s/ Joseph F. Anderson, Jr.
Columbia, South Carolina                   United States District Judge

20